IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 24, 2001 Session

## RANDY D. VOWELL v. STATE OF TENNESSEE

**Post-Conviction Appeal from the Criminal Court for Anderson County**
**No. 99CR0367     James B. Scott, Jr., Judge**

**No. E2000-01300-CCA-R3-PC**
**January 3, 2002**

An Anderson County jury convicted the petitioner, Randy D. Vowell, of one count of rape and one count of aggravated rape.  The trial court sentenced the petitioner to serve  concurrent sentences of twenty-three years for aggravated rape and eight years for rape as a Range I standard offender. The petitioner filed a new trial motion, which the trial court denied, and the petitioner appealed his conviction to this Court.  We affirmed the decision of the lower court, finding that all of the petitioner's claims of error were meritless, with the exception of the petitioner's claim of ineffective assistance of trial counsel, which this court declined to consider because the record on appeal was insufficient to review the petitioner's claim. See State v. Randy D. Vowell, No. 03C01-9709-CC-003383, 1998 WL 573296, at *2 (Tenn. Crim. App. at Knoxville, Sept. 8, 1998).  This Court also noted that because the petitioner's claim of ineffective assistance of counsel had not been waived or decided on its merits, it was open to collateral attack.  Id. at *2.  The petitioner filed a petition seeking post-conviction relief alleging that he received ineffective assistance from his trial counsel, and the post-conviction court denied his petition.  The petitioner now brings this appeal, challenging the post-conviction court's denial of his petition.  For the following reasons, we affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Billy P. Sams, Oak Ridge, Tennessee, for appellant, Randy D. Vowell.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; James N. Ramsey, District Attorney General; and Jan Hicks, Assistant District Attorney, for appellee, State of Tennessee.

# OPINION

## Factual Background

On direct appeal, this Court summarized the facts of this case as follows:

On Friday night, September 15, 1995, the thirteen-year-old victim spent the night at a girlfriend's house. The girlfriend's older sister was at home but was asleep. The victim and her friend watched television until around midnight when they went upstairs to go to bed. Shortly thereafter, they heard a car pull up near the house. The victim recognized the car as the [petitioner]'s vehicle. The victim knew the [petitioner] because her father had hired him to chop wood and do other labor. The victim testified that the [petitioner] had called her several times, usually when she was spending the night with MR [Ms. Mandi Rutherford]. The victim testified that she did not like the [petitioner] and would usually hang up on him when he called.

The victim went downstairs to find the [petitioner] standing in the door of the house. The victim told the [petitioner] that she and MR were getting ready to go to bed. She remembered, however, that MR did not have anything to drink and that she and MR were thirsty. The victim asked the [petitioner] to take her to a nearby store to get some soda.

The [petitioner] drove toward the store, but he turned off onto a gravel road. He would not tell the victim where they were going. The victim testified that the [petitioner] stopped the car, told her that she was beautiful, and asked her to kiss him. She refused. The victim testified that the [petitioner] locked the car doors and raped her. She testified that the [petitioner] got on top of her and held her hands behind her head. The victim testified that she told the [petitioner] "No," and tried to push him off of her. She testified that the [petitioner] removed their clothing and vaginally penetrated her. The victim testified that, after the rape, the [petitioner] told her that he was sorry. She told him not to do "it" again. The victim testified that the [petitioner] pulled the car forward, stopped, and vaginally raped her again. She testified that he told her that he would kill her if she told anyone what happened.

The [petitioner] took the victim back to MR's house. The victim told her friend what happened and called the police. The victim was taken to the hospital where she was examined. The hospital prepared and sent a rape kit to the Tennessee Bureau of Investigation (TBI). The emergency room physician, Dr. Van Mask, testified that his examination of the victim was neutral. He did not find evidence of sperm or evidence that the victim had been forcibly raped. Samera Zavaro, a forensic scientist at the TBI, testified that the vaginal swab in the rape kit tested positive for sperm. Raymond DePriest, another forensic scientist with TBI, testified that the DNA samples taken from the vaginal swabs of the victim matched that of the [petitioner].

The defense did not put on any proof. The state, however, introduced a statement made by the [petitioner] to a police officer. In the statement, the [petitioner] denied that he knew the victim. He did admit that on the night in question, he picked up a girl that he later learned to be the victim. He let her drive his car on some of the country back roads. He denied that he had ever made any advances toward the victim and that he had ever been interested in her.

Vowell, 1998 WL 573296, at *1-*2 .

The petitioner sought post-conviction relief, and the post-conviction court held a hearing on the matter. At the post-conviction hearing, the petitioner's trial counsel testified that he advised the petitioner not to testify, as the state could impeach him with several of his prior convictions and an inconsistent statement that the petitioner made to the police before the trial, stating that he had not engaged in sexual intercourse with the victim. However, at the post-conviction hearing, trial counsel testified that he was afraid that he may have overborne the petitioner's will to testify. The petitioner testified that he was advised of his right to testify by the trial court.

Trial counsel also stated that he chose not to cross-examine the victim or her friend, Ms. Rutherford, because he thought it would be more effective to ignore their testimony and focus instead on the more favorable testimony of the doctor who examined the victim after her alleged rape. However, he admitted that this decision could have constituted serious error on his part. When the petitioner testified at the post-conviction hearing, the petitioner gave examples of subjects with which he alleges his trial counsel should have cross-examined the victim and Ms. Rutherford. These subjects include several inconsistencies between his version of the events that occurred on the evening of the alleged rapes and the victim and Ms. Rutherford's version of those events.

The petitioner now brings this appeal, alleging that his trial counsel's failure to cross-examine two of the state's witnesses, the victim and Ms. Rutherford, coupled with his failure to allow the petitioner to testify at trial constitutes deficient performance, so prejudicing the petitioner as to warrant a new trial.

## Post-Conviction Standard of Review

In analyzing the issue raised, we first note that a petitioner bringing a post-conviction petition for relief bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks, 983 S.W.2d at 245 (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Furthermore, the appellate court is bound by the trial court's findings of fact, unless the record preponderates against those findings. Id. at 245.

**Effectiveness of Assistance of Counsel**

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). "Moreover, on appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "The burden is on the petitioner to show that the evidence preponderated against those findings." Id.

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. Adkins, 911 S.W.2d at 347. This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. Id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

**Failure of Petitioner to Testify at Trial**

The petitioner argues that his trial counsel overrode the petitioner's will by refusing to allow him to testify at trial and that counsel's insistence that the petitioner not testify was based on no valid strategic reason. The petitioner claims that trial counsel's actions prejudiced him by not allowing him to rebut the victim's versions of the events at issue and by preventing him from putting forth the defense of consensual sexual intercourse.

Essentially, the petitioner contends that his counsel deprived him of his right to testify in his own behalf. In Momon v. State, 18 S.W.3d 152 (Tenn. 1999), our supreme court held that the right of a defendant to testify in his own behalf is a fundamental constitutional right, which may only be personally waived by the defendant. Id. at 161. To ensure that the right to testify has been personally waived by the defendant, the Momon court directed trial courts in all future cases to follow procedural guidelines that call for defense counsel to request a jury-out hearing to demonstrate that the defendant's waiver of the right to testify has been knowingly, intelligently, and voluntarily made. Id. at 163.

In the instant case, the trial court held a jury-out hearing in which the court thoroughly explained to the petitioner his right to testify and which of his prior convictions could be used to impeach him if he chose to testify. After this colloquy, the trial court advised the petitioner to discuss whether he would testify with his counsel and to give the court his decision the next day. The next day, the defense rested without putting on proof from the petitioner.

Defense counsel did not, pursuant to the mandates of Momon, voir dire the petitioner in a jury-out hearing in order to establish, on the record, that the petitioner was knowingly, intelligently, and voluntarily waiving his right to testify. However, first, we note that our supreme court decided Momon in 1999, three years after the petitioner was convicted of the crimes at issue. Momon does not have a retroactive effect. Id. at 162-63; see also Andrew Byers v. State, No. M2000-01697-CCA-R3-PC, 2001 WL 689744, at *2 (Tenn. Crim. App. at Nashville, June 20, 2001). Therefore, its dictates are not applicable to the case at bar.

Second, the Momon court noted that defense counsel's voir dire of a defendant is not constitutionally required and that "the mere failure to follow these guidelines will not in itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant." Id. at 163; see also State v. Anthony S. Carie, No. M2000-02942-CCA-R3-CD, 2001 WL 1152818, at *4 (Tenn. Crim. App. at Nashville, Oct. 1, 2001). We find that there is sufficient evidence in the record to establish that the petitioner personally waived this right. On the day before the petitioner declined to testify, the trial court properly advised the petitioner that he had a right to testify and that only he could waive this right. Moreover, at the petitioner's post-conviction hearing, the petitioner testified that his counsel discussed with him what would happen if he took the stand and advised him that it was not in his best interest to do so. Therefore, because the trial court fully advised the petitioner of his right to testify and the petitioner elected to follow his counsel's advise and chose not testify, we find that the petitioner cannot now claim that his attorney abrogated his right to testify and thus prejudiced his defense. Moreover, the petitioner's trial counsel did not provide deficient representation; counsel correctly advised the petitioner that if the petitioner chose to take the stand, he could be impeached with one of his prior convictions and that he could be forced to admit that he had lied in his earlier statement that he made to the police. Thus, we find that this issue lacks merit.

**Failure of Trial Counsel to Cross-Examine State's Witnesses**

The petitioner argues that his trial counsel's failure to cross-examine two of the state's witnesses, the victim and the victim's friend, Ms. Rutherford, constitutes ineffective assistance of counsel. However, at the post-conviction hearing, trial counsel testified that he chose not to cross-examine the witnesses based on trial strategy. Specifically, he chose not to cross-examine these state witnesses because he wanted to diminish the importance of their testimonies by not "bothering" to cross-examine them, thereby "not dignify[ing]" the state's case. He feared cross-examining these witnesses would be deemed "carping" and would be a less effective tactic than focusing on the more favorable evidence presented at trial, specifically the objective testimony of the physician who performed the rape kit on the victim. While trial counsel stated several times at the post-conviction

hearing that he seriously doubted whether his failure to cross-examine these witnesses was a wise decision, such post-trial doubts are not relevant to our analysis. As stated supra, a petitioner is not entitled to the benefit of hindsight when alleging claims of ineffective assistance of counsel. See Adkins, 911 S.W.2d at 347. The relevant inquiry is whether trial counsel provided effective representation based on reasonable trial strategy and his knowledge at the time of trial. We find that the petitioner's trial counsel decided not to cross-examine the state witnesses after adequate preparation and based upon a reasonable trial strategy, ignoring this less favorable testimony and focusing on the more favorable objective testimony. Therefore, counsel's representation was not deficient.

Furthermore, at the post-conviction hearing, the petitioner testified regarding inconsistencies that his trial counsel should have brought to the jury's attention by cross-examining these two witnesses. The petitioner testified that he had a different version of the events that transpired on the evening of the alleged rapes and believes that his counsel should have cross-examined these witnesses regarding the inconsistencies between his version of the events and their version. Additionally, the petitioner's sister testified that she had procured the petitioner's car door for counsel to use as an aid to demonstrate that the victim had not described the petitioner's car door locks accurately. However, the petitioner has failed to demonstrate a reasonable probability that a more vigorous cross-examination of the victim and Ms. Rutherford would have altered the results of his trial. As such he has failed to prove any prejudice as a result of counsel's failure to cross-examine these witnesses.

Because the petitioner has not proven that his trial counsel's failure to cross-examine the victim and Ms. Rutherford was either deficient or prejudicial, we find that this issue lacks merit.

### Conclusion

For the foregoing reasons, we find that none of the petitioner's allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

-6-